UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————

INTEGRATED COMMUNICATIONS &      )
TECHNOLOGIES, INC. et al,         )
                                  )
          Plaintiffs,             )
                                  )
v.                                )          Civil No. 16-10386-LTS
                                  )
HEWLETT-PACKARD FINANCIAL         )
SERVICES COMPANY et al.,          )
                                  )
          Defendants.             )

———————————————————————

ORDER CONCERNING ATTORNEY DISCIPLINE
UNDER LOCAL RULE 83.6.5

January 12, 2021

SOROKIN, J.

On March 8, 2016, the Court admitted Attorney Dimitry Joffe to appear pro hac vice in

this case as Plaintiffs' counsel.  Doc. No. 13.[1]  In November 2020, nearly five years later, after

Attorney Joffe received numerous admonitions and reprimands as well as at least one sanction,

Plaintiffs obtained new counsel.  Doc. Nos. 407, 408, 409.  Two days later, Defendants filed a

motion for sanctions and to refer Attorney Joffe for disciplinary proceedings, including possible

revocation of his pro hac vice admission.  Doc. No. 414.  After Attorney Joffe filed a response to

Defendants' motion for sanctions and referral, Plaintiffs' new counsel moved for Attorney

Joffe's withdrawal, which the Court allowed subject to resolution of the pending motion for

referral. Doc. Nos. 422, 434, 435.  For the reasons set forth below, the Court finds that there is a

—————————————

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing
system; pincites are to the page numbers in the ECF header.

serious question whether Attorney Joffe engaged in misconduct by violating this Court's Local Rules and the Massachusetts Rules of Professional Conduct.  The Court therefore refers this matter of potential attorney misconduct to the presiding judge, as defined by Local Rule 83.6.5(c)(2), for review and possible further action.[2]

I.    BACKGROUND

A.    The Underlying Case

The operative complaint makes the following factual allegations.[3]  In 2011, Defendants Hewlett-Packard Financial Services Company ("HPFS") and Hewlett-Packard Financial Services (India) Private Limited ("HPFS India") sold a collection of used computer equipment to Plaintiff Integrated Communications & Technologies, Inc. ("Integrated"), for Integrated's resale in China, after fraudulently representing that it was genuine.  Doc. No. 101 ¶¶ 25, 43.  When Integrated's broker shipped the equipment to China as arranged, it was found to be unmarketable.  Id. ¶ 47. As Integrated attempted to resell the equipment, representatives of H3C, a Chinese affiliate of HPFS, lodged a complaint with Chinese police that accused Integrated and its employees of marketing counterfeit HP products, without telling the police that Integrated had bought the equipment from H3C's own affiliate companies.  Id. ¶ 52.  Based on the complaint, three Integrated employees were arrested and jailed for selling counterfeit or stolen equipment.  Id. ¶ 60.  During the employees' imprisonment, Integrated made extensive attempts to have various HP entities intervene with the Chinese police on the employees' behalf, many of which were rebuffed, ignored, or delayed.  Id. ¶¶ 117, 165.  After the employees spent seven months in torture-like conditions, Chinese police released them in July 2013.  Id. ¶ 193.  Plaintiffs

---

[2] Because this case arose in the Court's Eastern Division, the presiding judge is the Miscellaneous Business Docket Judge.  See L.R. 83.6.5(c)(2).

[3] The Court takes no position on the veracity of these factual allegations.

eventually brought suit in 2016, advancing claims arising out of the sale of computer equipment and out of Defendants' alleged responsibility for the Integrated employees' incarceration, including their failure to adequately address the situation once made aware of it.  Id. ¶¶ 237–356.

      B.    Legal Proceedings

Although to date this lawsuit remains in discovery, it nevertheless spans over five years and more than 400 docket entries.  The Court describes only that portion of the litigation relevant to this Order.

In December 2015, Attorney Lester Riordan filed in state court the original, concise, twenty-three-page complaint on behalf of Integrated and the three employees imprisoned in China, alleging claims encompassing both the sale of the goods and the imprisonment.  Doc. No. 1-1.  Shortly after Defendants removed the case to this Court, Doc. No. 1, Attorney Dimitry Joffe appeared pro hac vice, Doc. No. 13.  Since then, unless noted otherwise, Attorney Joffe has served as lead and effectively the only counsel for Plaintiffs.

At the July 2016 hearing on Defendants' motion to dismiss the complaint, Attorney Joffe requested leave to file an Amended Complaint in light of issues raised concerning the act-of-state doctrine.  Doc. No. 40.  The Court granted this request and established a schedule for the anticipated renewed motion to dismiss.  Id.

Attorney Joffe never suggested any obstacle prevented him from advancing the good-faith allegations required to support the claims he intended to advance.  In July 2016, he filed the Amended Complaint.  Doc. No. 41.  Although still only encompassing claims addressing the sale of goods and imprisonment, the complaint had almost doubled in length to forty-three pages.  Id. After full briefing of motions to dismiss the Amended Complaint (motion, opposition, reply, and a surreply as to one motion), Attorney Joffe sought to file another complaint.

Specifically, on January 4, 2017, Attorney Joffe filed a motion seeking leave to file a second amended complaint.  Although the pleading he sought to file still only addressed the sale of the goods and the imprisonment, it had now ballooned to 119 pages, nearly eighty pages longer than Plaintiffs' first amended complaint.  Doc. No. 64.  The motion did not include a supporting memorandum.  See L.R. 7.1(b)(1).  Nor did it explain what parties or claims Plaintiffs sought to add.  The motion made a conclusory allegation that the six months since Plaintiffs' first amended complaint was filed in July 2016 was a "testament" to Defendants' deceit.  Doc. No. 64 at 2.  On January 13, 2017, the Court denied the motion, admonishing as follows:

> Plaintiffs' counsel does not explain how any alleged deceit could possibly have delayed him from learning of some of the new claims and parties he has added . . . [O]n preliminary review of the proposed [second amended complaint], the Court has concerns about, inter alia, its compliance with [Fed. R. Civ. P.] 8 and the viability of fraud claims against certain individual defendants who have just been added.  The Court warns that any party bringing fraud claims that patently fail to comply with [Fed. R. Civ. P.] 9(b) risks being sanctioned pursuant to [Fed. R. Civ. P.] 11.

Doc. No. 67.  Nonetheless, the Court permitted Plaintiffs to file a further proper motion for leave after ruling on the then-pending motions to dismiss.  Id.  On January 18, 2017, offering no changes in the proposed pleading Attorney Joffe filed a motion for reconsideration, in which he wrote: "The Second Amended Complaint also alleges that the proposed [individual defendants to be added] were fully aware of the fraud and either directed, orchestrated, or at the very least willfully ignored the malicious and fraudulent campaign conducted . . . on behalf of all Defendants."  Doc. No. 68 at 8.  Thus, Attorney Joffe asserted he "st[oo]d by" even the allegations identified by the Court as implicating Rule 11.  Id.  The Court denied the motion, warning Plaintiffs that, if they "file[d] a motion for leave to amend, . . . the proposed amended complaint accompanying the motion must comply with Federal Rule of Civil Procedure 8."  Doc. No. 69 at 16 n.8.  Simultaneously, the Court resolved the pending motions to dismiss.  Id.

On January 25, 2017, Attorney Joffe's local counsel, Attorney Riordan, filed a motion to withdraw. Doc. No. 71. Because no other attorney who was a member of the Massachusetts bar had appeared on behalf of the Plaintiffs, the Court directed Attorney Joffe to respond to the motion. Doc. No. 72. He did so, explaining his position that local counsel was not required. He wrote: "In these circumstances, requiring a continuing appearance of local counsel — without a clear basis for it under Local Rules, contrary to the Massachusetts Rules of Professional Conduct, and in the absence of any controlling or persuasive authority — would be inconsistent with the purpose of securing 'inexpensive determination of every action and proceedings,' as required by Rule 1 of the Federal Rules of Civil Procedure." Doc. No. 77 at 4. The Court denied local counsel's motion until successor local counsel appeared. Doc. No. 78.

On February 8, 2017, Attorney Joffe renewed his motion for leave to file a second amended complaint. Doc. No. 79. After briefing and due consideration, the Court allowed in part Attorney Joffe's request to file a second amended complaint, ruling in part:

- "Portions of the [second amended complaint] are subject to strike under Rule 12(f) and/or violate Rule 8. The SAC is verbose and argumentative to the point of being unprofessional." Doc. No. 95 at 2 n.2.

- "Plaintiffs must delete any insulting, argumentative, or superfluous passages before they file the revised Second Amended Complaint." Id. The passages struck included: alleging Meg Whitman was a "celebrity CEO"; that certain documents were "better read on an empty stomach"; irrelevant allegations describing chess strategy; references to attached documents that were not attached; alleging a letter was "the same repulsive mix of lies and conceit"; irrelevant allegations concerning the FBI's alleged conduct in a case involving Peter Limone;[4] and allegations concerning Attorney Joffe's own understanding of events. Id.

- "Despite the length of the [second amended complaint], it does not contain sufficient factual allegations to state a plausible claim against Whitman and Schultz, under either Rule 8 or Rule 9(b)." Id. at 8. The Court noted its prior rulings specifically admonished Joffe about advancing claims against a person without a sufficient basis.

---

[4] Neither Peter Limone nor the FBI have anything to do with this case.

- "The instant [second amended complaint] is identical to the prior version that the Court addressed twice in January 2017. Plaintiffs failed to make any effort whatsoever to cure any, let alone all, of the violations of Rule 8. The [second amended complaint] now, as before, also contains the same typographical errors and the same missing citations to earlier paragraphs of the [second amended complaint]." Id. at 14.

- "All filings in the future shall be by way of motion or other pleading, conforming to all of the requirements applicable to such filings, rather than letters." Id. at 15.

Attorney Joffe timely filed a revised second amended complaint, which remains the operative complaint.  Doc. No. 101.

The Defendants answered and counterclaimed.  Doc. Nos. 106, 107, 108.  On September 22, 2017, Attorney Joffe filed motions to dismiss Defendants' counterclaims.  Doc. Nos. 109, 110, 111.  His motions suffered from at least two deficiencies.  First, he requested dismissal of counterclaims that did not exist.  That is, he sought dismissal on behalf of all Plaintiffs, including Individual Plaintiffs Caroline Marafao Cheng, Pushun Cheng, Changzhen Ni, Junfang Yu, Meixiang Cheng, Fangshou Yu, and Changhua Ni.  However, Defendants advanced no counterclaims against these Plaintiffs.  Second, the motions also assumed the facts in Plaintiffs' second amended complaint were established as a matter of law, disregarding the legal standard applicable to a motion to dismiss.  The Court denied the motions for these reasons, allowing Plaintiffs to renew their arguments only "in a motion for summary judgment filed at, but not before, the time the Court establishes for the filing of summary judgment motions in this case." Doc. No. 115 at 2.

With those pleading issues resolved, two years after the inception of this lawsuit, discovery finally began.  On January 16, 2018, the Court adopted a proposed scheduling order that established various discovery deadlines.  Doc. No. 145.  On May 29, 2018, at the request of the parties, the Court referred the parties to mediation but did not stay discovery deadlines, remove the case from its trial calendar (though no trial date was yet established), or otherwise

stay the case.  Doc. No. 157.  On August 7, 2018, Magistrate Judge Dein reported that further efforts to settle the case were not likely to be productive, thereby concluding the mediation process.  Doc. No. 163.  Rather than proceed to prosecute his case after the unsuccessful mediation, Attorney Joffe apparently did nothing for three months, after which he filed a motion titled "Plaintiffs' Motion to Restore Case to Trial Calendar and Amend Scheduling Order."  Doc. No. 168.  The motion sought to postpone the scheduling order by seven months.  Id. at 2.  Defendants opposed such a wholesale postponement.  Doc. No. 169.  On November 11, 2018, the Court denied Plaintiffs' motion, noting that "[t]he Court never formally stayed this matter so there is nothing to 'restore.' The parties were (and are) free to seek an adjustment to the schedule, but the burden to do so is on the parties."  Doc. No. 170.

On June 3, 2019, Defendants filed a status report that described Plaintiffs' failure to meet discovery deadlines.  Doc. No. 194 at 4.  Defendants wrote that Plaintiffs had just produced an additional 162,910 pages of purportedly responsive documents, weeks after the relevant deadline.  Id.  The Court convened a June 10, 2019, status conference, at which Defendants informed the Court that Plaintiffs had, since Defendants' status report, produced an additional 621,000 pages of documents, of which "a large proportion" was "entirely nonresponsive," including "hundreds of thousands of literal spam.  If you search for the word spam, you will get tens of thousands of hits."  Doc. No. 211 at 4, 7, 27.  The Court admonished Attorney Joffe for disclosing the vast majority of discovery documents after the applicable deadline and delaying the case's schedule, "which . . . means this case is going to take at least six weeks longer than it otherwise would."  Id. at 24.  The Court also reminded the parties to follow the Local Rules with respect to motions to compel.  Id. at 28; see also L.R. 37.1.

On August 23, 2019, Attorney Joffe filed a motion to compel certain discovery production.  Doc. No. 223.  On September 13, 2019, during a status conference on the continued discovery issues, the Court again admonished Attorney Joffe for opposing a motion from Defendants seeking leave to file a reply and for the enormous discovery disclosure of spam.  The Court stated:

- "That motion was a waste of time, the opposition.  Okay?  There's no reason you should have opposed a reply.  There's generally very little reason to oppose a reply."  Doc. No. 262 at 8.

- "You, Mr. Joffe, are ordered, that you may not charge your client for writing the opposition to the motion for leave to reply.  And if you ever prevail on this case on a ground that entitles you to attorney's fees, you may not seek to recover fees for writing that opposition.  Okay?  That opposition is on you."  Id. at 13–14.

- "[W]ith respect to your motion to compel, okay?  This is how I view this and this is just — the deadline was July 22nd, right?  I haven't moved that deadline.  The deadlines, so we're all clear, are established by the Court and they're not for you to just do whatever you feel like with.  They're not aspirational."  Id. at 14.

- "[A]s a general matter, I don't think you're entitled to dump 775,000 pages, including what you know includes literal junk, as in junk e-mails, on the other side, and just say 'here.'  I just don't think that's proper under the rules."  Id. at 34–35.

At the status conference, Attorney Joffe also "admit[ted] that producing 700 something thousand pages was not the right way to do it."  Id. at 40.

On September 16, 2019, the Court denied Plaintiffs' motion to compel, ruling that "it fail[ed] to comply with Local Rule 37.1(b) and with the Court's specific instructions that all such discovery motions comply with that [rule]. This is not the first time counsel for the Plaintiffs has disregarded the Court."  Doc. No. 234 at 1.  On the same day, the Court allowed in part a motion to compel filed by Defendants, writing in its Order: "Counsel for Plaintiffs are cautioned that the Local Rules of this Court require record support for factual assertions.  The opposition is replete

8

with assertions bearing neither a citation nor any other record support. . . . All counsel are reminded of the requirements of Local Rule 37.1(b)."  Doc. No. 236 at 5 n.3.

On September 20, 2019, having appointed a discovery expert to resolve ongoing discovery disputes, the Court assessed the cost of the expert to Plaintiffs "[b]ecause the dispute was caused by Plaintiffs' overproduction of unresponsive and irrelevant documents."  Doc. No. 241 at 2.

On October 7, 2019, the Court ordered Attorney Joffe to file certificates of conferral as required by Local Rule 7.1(a)(2) for two motions that had not included them.  Doc. Nos. 244, 245.

On October 8, 2019, Attorney Joffe filed a renewed motion to compel.  Doc. No. 249. Some background explanation is required.  As explained in detail in the Court's order on the motion to compel, the parties originally submitted a proposed joint ESI agreement leaving some disputed matters for the Court to resolve, including the identity of some custodians whose data would be reviewed.  Doc. No. 280 at 4–13.  Although the Court gave the parties guidance on the disputes, it did not resolve them.  Id.  Thereafter, the parties attempted to settle the matter, after which they submitted a revised joint ESI protocol with all matters including the identity of the custodians agreed upon.  Id.  The Court adopted that protocol.  Id.  Months later, Attorney Joffe filed his motion to compel based upon the original superseded protocol, making no mention of the governing protocol to which he had agreed.  Moreover, much of what he contested in the motion to compel was directly at odds with the revised ESI Protocol to which he had agreed.  Id. Accordingly, on November 15, 2019, the Court denied the motion, finding that Plaintiffs had demonstrated a lack of diligence in pursuing discovery and had repeatedly misrepresented the record.  Id.  That Attorney Joffe understands electronic discovery and the importance of advance

planning to conduct discovery properly and practically is clear.  Along with several others, years

before, he wrote, as the Court noted, Doc. No. 280 at 12 n.11, that electronic discovery "[a]s a

practical matter . . . require[s] advance planning in order to avoid the many potential pitfalls in

the area of electronic discovery."  Warren R. Stern, Marc Wolinksy, Dimitry Joffe & Alison L.

Plessman, *Electronic Discovery and the Proposed Amendments to the Federal Rules of Civil*

*Procedure*, 6 SEC. LITIG. REP. 13 (2006).

On November 25, 2019, Attorney Joffe moved for reconsideration of the Court's order on

Plaintiffs' motion to compel.  On January 9, 2020, the Court denied the motion, holding that,

"[a]s a threshold matter, Plaintiffs' argument does not warrant reconsideration of the Court's

Order because the argument arises not from newly discovered evidence but from Plaintiffs'

failure to exercise reasonable diligence."  Doc. No. 300 at 2.  Simply put, documents unread until

well after discovery closed were not a basis to compel further production or reopen discovery.

Id. at 2–3. The same reasoning applied to expanding the scope of custodians for purposes of

electronic searches.  Id. at 5.

In 2020, as the parties turned to depositions and summary judgment on the narrow

question of whether the goods sold were counterfeit, Attorney Joffe's apparent misconduct

continued.  On February 5, 2020, during the deposition of Shelley Raina, Attorney Joffe asked

Raina to identify who helped him prepare his expert report.  Doc. No. 331-1 at 8.  The following

exchange then took place between Plaintiff Alex Styller, Integrated's president; defense counsel

Michael Bunis; and Attorney Joffe:

> MR. STYLLER:  Are you on drugs?  Michael, are you on drugs?
>
> . . .
>
> MR. BUNIS: So I just want to put on the record that, Dimitry, you and I had a
> conversation about Mr. Styller's questions to me during the course; and we
> discussed how that was not going to happen again. And I indicated to you if it did,

> that we would have the witness — we would suspend the deposition and you agreed with me?
>
> MR. JOFFE: Well, I agreed that's what you said; and I instructed the plaintiff not to talk to you.

Doc. No. 331-1 at 8–9.  Later, the following exchange took place:

> MR. BUNIS: I just want to point out that during the break I was informed that Mr. Styller was speaking with the witness — attempted to speak with the witness in the restroom and instructing him or talking to him about his testimony and — in addition to that, I've noted that over the course of the morning Mr. Styller has been staring at the witness, what appears to me to be an attempt to intimidate him and me; and I'm going to ask that that stop.
>
> . . .
>
> MR. JOFFE: Did Mr. Styller attempt to talk to you about the depositions — about your deposition in the restroom?
>
> MR. RAINA: Yes.
>
> MR. JOFFE: What did he say?
>
> MR. RAINA: "Say the truth and you'll be fine."

Id. at 21.  Notably, the deposition transcript contains no statement by Attorney Joffe (1) instructing his client not to interrupt the deposition proceedings with baseless harassing allegations, (2) directing his client not to speak with the testifying witness about the matters at hand during the breaks, or (3) either directing his client not to attempt to physically intimidate the witness or disputing that alleged behavior.

On March 16, 2020, Defendants moved for summary judgment and to strike certain testimony.  Doc. Nos. 315, 318.  On March 23, 2020, Defendants moved for sanctions based on Plaintiffs' spoliation of evidence.  Doc. No. 320.  On April 16, 2020, Attorney Joffe filed a memorandum in opposition to the summary judgment motion "and in support of Plaintiffs' cross-motion," although no such motion had been filed and no certificate of conferral was attached.  Doc. No. 330.  On April 17, 2020, Defendants filed a status report stating that

"Plaintiffs' counsel never conferred with Defendants' counsel regarding any such cross-motion, and never shared with Defendants any reasons why Plaintiffs believe they have a good-faith basis to file a cross-motion."  Doc. No. 333 at 2.  The status report also observed that Plaintiffs had failed to meet several deadlines for motion practice without seeking an extension from the Court.  Id. at 3.

On August 13, 2020, the Court allowed Defendants' motion for sanctions in part, finding that "Plaintiffs willfully and recklessly destroyed various kinds of evidence that was potentially relevant to this litigation after their duty to preserve such evidence had been triggered."  Doc. No. 368 at 1.  The Court found that Integrated and Styller had willfully destroyed electronic records relevant to the case well after reasonably anticipating litigation, including emails of a former employee.  Id. at 7.  It rejected Plaintiffs' arguments that they did not want litigation at the time of the records destruction and that the destroyed records would be of little use to Defendants.  Id. at 9–10.  The Court imposed sanctions against the Plaintiffs pursuant to Fed. R. Civ. P. 37(e).  Id. at 11.

On the same day, the Court ruled on various other motions, including Defendants' summary judgment motion, and ordered the parties to "file a status report within 14 days presenting their respective positions as to the further discovery and motion practice required in advance of the trial scheduled in this case."  Doc. No. 369.  Only Defendants filed a status report.  Doc. No. 371.  On August 28, 2020, the Court entered a revised scheduling order, stating: "Plaintiffs failed to state their own positions in the joint status report, failed to file their own separate status report, failed to seek a continuance in the deadline established by the Court and failed to make any other filings in response to or after the Court's August 13, 2020 Order."  Doc.

No. 372 at 1.  Thus, because Plaintiffs had asked for no further discovery, such as any depositions, the Court authorized none for the Plaintiffs.  Id. at 3.

On September 2, 2020, Attorney Joffe filed a motion for discovery that argued that, while Defendants' status report was "styled as [their] own," it included certain statements intended to be made jointly and therefore "Plaintiffs believed their rights to pursue deposition discovery were preserved by the status report."  Doc. No. 373 at 4.  On September 9, 2020, the Court ruled on the motion, allowing Plaintiffs to take depositions but highlighting the following:

- "Months ago, the Court notified counsel that it would expect a joint status report fourteen days after the Court ruled on the cross-motions for summary judgment filed by the parties. The Court reiterated that Order at the conclusion of its summary judgment ruling. As explained previously, Defendants complied with that Order. Plaintiffs did not." Doc. No. 375 at 1.

- "Regarding the request for depositions, following the course the Plaintiffs have charted in this case of disregard for the governing rules, see, e.g., Doc. Nos. 67, 69, 234, 368, Plaintiffs are unrepentant for their disregard of the Court's Order." Id. at 2.

- "Finally, Plaintiffs are warned that their misconduct and disregard of the rules identified by the Court throughout this case may be considered cumulatively in the course of this litigation including possibly in the form of evidence in front of the jury or an instruction to the jury." Id. at 3.

On October 27, 2020, defense counsel Paul Saso sent a letter to Attorney Joffe regarding the deposition of former Integrated employee Alexander Pekar.  Attorney Joffe replied by e-mail stating, "I spoke with Mr. Pekar very briefly on the phone to inform him that [Defendants] attempted to serve him, and the options that [Defendants] proposed."  Doc. No. 395-2 at 2.  On November 2, 2020, during an email exchange, Attorney Joffe informed Attorney Saso that "Plaintiffs will move to quash the subpoena for invalid service [for Mr. Pekar]."  Doc No. 395-4 at 2.  On November 4, 2020, Attorney Saso moved for leave to serve Mr. Pekar by alternative means, writing that Attorney Joffe had represented to defense counsel that he "represented all former [Integrated] employees whom Defendants sought to depose, including Mr. Pekar."  Doc.

No. 395 at 1.  Attorney Saso wrote that Attorney Joffe had "suggested that he would accept the subpoena on Mr. Pekar's behalf on the condition of his appearing" at certain times, but then later on the same day, said he would not accept service on Mr. Pekar's behalf.  Doc. No. 395 at 4.

On November 4, 2020, during the deposition of David Gill, in response to defense counsel's request to tone down his "aggressive" demeanor, Attorney Joffe stated: "I am only rude to you because you incessantly interrupt my deposition, and take my time with your idiotic comments, and interruptions, okay?  And you endeavor to talk to me every second you can, and I don't want to talk to you at all."  Doc. No. 416-5 at 2–3.[5]

On November 10, 2020, during the deposition of James O'Grady, the following exchanges took place between Attorney Joffe, Attorney Bunis, defense counsel Mark Edgarton, and the witness:

> MR. JOFFE: You are on the video. I'm not kidding today, Mr. O'Grady. I'm telling you that you are in much worse position than your prior witnesses, because I know so much now. If you continue the coverup, I will catch you. And I will catch you lying. The consequences will be so severe. I will get to them in a second. Okay? I haven't gotten there yet.
>
> MR. BUNIS: Okay. I'm just going to object to this line of questioning, Dimitry, that this seems to me to be an effort to try to intimidate this witness from the very beginning of the deposition.
>
> MR. JOFFE: Yes.
>
> MR. BUNIS: And I'm going to caution you that you should not engage in that kind of line of questioning. And if you do, I really think it is time that we are going to take some action, because you know that it is improper. And I'm just going to make it clear what you are doing.
>
> . . .

---

[5] To this point, Attorney Joffe had never raised a complaint about defense counsel's behavior at the depositions.  At a later status conference, he said he intended to file a motion raising misconduct by defense counsel at the depositions, but no such motion has been filed.  Nothing in the record supports the assertion by Attorney Joffe.

MR. BUNIS: I'm going to just caution you again, Dimitry, because, again, your questioning and your demeanor is threatening to the witness, and it is just inappropriate, and I want you to stop.

MR. JOFFE: Mr. O'Grady, are you threatened by me? By my demeanor? You are under oath, Mr. O'Grady. Are you threatened by my demeanor?

MR. O'GRADY: Not physically, but when someone says they are going to come at you, then it is very concerning.

MR. JOFFE: They are going to do what? What did I say?

MR. O'GRADY: Very concerning. It is very concerning to me.

MR. JOFFE: No, no, no, but what is concerning? I just didn't hear the word.

MR. O'GRADY: I said when you asked about your demeanor, I said it would be very — it's very concerning to me.

. . .

MR. JOFFE: I'm not kidding here. I'm dead serious.  Are you prepared to give me a truthful answer, it they expose HP to criminal liability?

MR. BUNIS: I'm going to object again. And, Dimitry, language like, I'm dead serious, and the manner in which you are asking that question, is exactly the type of demeanor that I just described to you just before that the witness testified that he is uncomfortable with.  And we're not going to do this over and over again.

MR. JOFFE: You just wait where I'm going. You just wait. We're just getting started. Just getting started.  Okay?  Save your breath for later.

. . .

MR. JOFFE: Let me tell you this, Mr. O'Grady. If you lie today, I will catch you lying. If I catch you lying, you are part of this coverup.

MR. EDGARTON: Let's take a break. Let's take a break while Dimitry calms down.

MR. JOFFE: And nobody will protect you. So —

MR. EDGARTON: Let's take a break. You need to compose yourself, Dimitry. You need to compose yourself.

MR. JOFFE: — Fifth Amendment. Because you testify today, you waive it. You waive your Fifth Amendment rights. And if you are part of this coverup, if you lie,

if you destroy documents, if you did anything of that, and you lie today in this deposition —

MR. BUNIS: Stop. We're going to —

MR. JOFFE: — you waive your Fifth Amendment and you are done. We are going to take a break as your counsel asked for. After the break you come back, and I ask you whether you are going to be part of this coverup or whether you are going to give me a truthful answer. And you can do two things. You can claim: I refuse to answer this on Fifth Amendment grounds. Or you can give me the truthful answer. There is no other choice, Mr. O'Grady. I know all. I have documents. I will lay it out for you after you come back from the break. And I will ask you hard questions. It is not my demeanor. It is my clients who spent time in jail because you fob-off counterfeit equipment to them. Okay?

MR. BUNIS: Stop. Stop. Stop. Enough with the diatribe. We are done with this. We are not going to have this anymore. Let's go off the record.

. . .

MR. JOFFE: Mr. O'Grady, I want to make sure that you understand this is a real fair warning —

MR. BUNIS: Let's take a break.

MR. JOFFE: We have a reference to ask the U.S. Attorney's office to have a federal prosecutor look at HP's conduct of this litigation because a number of federal felonies have been committed. I'm not kidding. When I say that you are under oath on the video, what I mean is, yes, I will take it to the court, and I will demand that federal prosecutors start looking into this case. And if you have a choice today, Mr. O'Grady, it is your choice, it is you sitting in this chair. You will be answering my questions. If you lie to me today, as other witnesses did —

MR. BUNIS: Stop. Stop. We are going off the record. This is enough. You are just yelling at the witness. There are no questions.

Doc. No. 416-2 at 22–23, 50–51, 55, 59–63.[6] Attorney Bunis thereafter terminated the

deposition. Id. at 64.

Later that day, at an already-scheduled status conference, defense counsel informed the

Court of the events at Mr. O'Grady's deposition. Doc. No. 416-4 at 5–6. As the status

---

[6] Again, while only the most relevant portions of the deposition are excerpted here, the entire deposition is relevant. See generally Doc. No. 416-2.

conference continued, Attorney Joffe repeatedly interrupted the Court, prompting the following

admonitions:

> THE COURT: I'm not finished, Mr. Joffe.  The way this works is you can speak.
> I'll give you a full and fair opportunity, but not until I'm done.
>
> . . .
>
> THE COURT: Don't interrupt me.
>
> . . .
>
> THE COURT: . . . [D]on't interrupt me.  It's especially difficult, Mr. Joffe, under
> Zoom, when you do that.  Okay.  Just wait.  I will give you the chance, as I've
> always . . . given you the chance, to say everything you wish to say.  When you do
> that, you obstruct the entire proceeding, and you make the record — you make it
> difficult for me to understand what you said, you make it difficult for everybody
> else, and you make the record difficult to report as to what transpired.  So, please,
> don't do that.

Doc. No. 416-4 at 25, 36, 42.  Defendants agreed to provide the Court a video recording of the

deposition.  Id. at 79.

At the same status conference, Attorney Joffe made the following statements to the Court

regarding Mr. Pekar's representation:

> THE COURT: Do you represent him with respect to the deposition —
>
> MR. JOFFE: I'm not, with respect to the depositions, I will.  I'm not his attorney.
> He didn't retain me.  I told him, as I told every one of the former employees, we'll
> represent them and defend them on depositions.  I'm not his attorney.  He didn't
> authorize me to accept service of the subpoena.
>
> THE COURT: Are you authorized to speak for him here, with respect to the
> depositions?
>
> MR. JOFFE: Well, no.  I'm not speaking for him here.  No, I'm not speaking for
> him here.  Why am I — I haven't talked to him.  I have no contact with him.
>
> . . .
>
> MR. JOFFE: — they will serve him and they haven't served him.  And I didn't
> really discuss anything with him about that.  I told him I will and that was it.

THE COURT: So here's the thing, you represent him for purposes of this deposition and as we sit here today correct?

MR. JOFFE: Yes, okay.  Yes, your honor.

THE COURT: It's not "okay." I am asking you.

MR. JOFFE: No, correct.  I suppose.

THE COURT: Okay.  Well, it's not really I suppose, either you do or you don't.

MR. JOFFE: Well, I do, Your Honor.

THE COURT: Okay.  Fine.  So then the question is, Mr. Joffe — and so far, in your view, service has not been perfected. Yes or no?

MR. JOFFE: Yes, Your Honor, it wasn't.  It was mailed.

THE COURT: He's not been properly served.

MR. JOFFE: And it wasn't valid service.

THE COURT: All right.  And are you going to accept service for him, or waive service?

MR. JOFFE: No, I haven't spoken with him.  I need to talk to him about that, because —

THE COURT: At the moment, you're not agreeing to waive service and you're not agreeing to —

MR. JOFFE: I will not — no, I'm not agreeing without consulting with Mr. Pekar to waive service on his behalf, I'm not.  I can't.

. . .

THE COURT: Mr. Joffe, I'm just trying to understand.  On the one hand, you won't waive service, which is fine.  I don't have a problem with that.  But on the other hand, you say you already agreed to have him deposed on November 9th, even though he hadn't been served.  That makes no sense.

MR. JOFFE: I haven't agreed.  I told them — I told the defendants and I have it in writing, I will find it.  It was several times, I told them that I've heard from Mr. Pekar. He called me like for five minutes.

Doc. No. 410 at 28–34.[7]  At the conclusion of the conference, the parties submitted the video of Mr. O'Grady's deposition.  See Doc. No. 398.

After reviewing the recording of Mr. O'Grady's deposition, the Court convened a status conference on November 12, 2020, at which it informed the parties of its intent to appoint a retired judge to supervise all future depositions.  Doc. No. 416-3 at 13.  Attorney Joffe again repeatedly interrupted the Court, prompting the following reprimand:

> THE COURT: So Mr. Joffe, several things.  One, I reminded you last time.  There's a way in which court works.  And the way in which court works is that I'm the judge, in case you forgot.  And what that means is when I'm speaking, you don't interrupt me.  When I'm finished, you will have an opportunity to make whatever points you make.  In the course of this four and a half years, I've never prevented you at a hearing from making whatever statements or objections you wish to make and I'm not about to start now.  So — but I specifically reminded you on Tuesday that don't interrupt. . . . It is not only improper conduct of a lawyer, it is also rude.

Id. at 19.  At the status conference, Defendants moved for the revocation of Attorney Joffe's pro hac vice admission.  Id. at 35.

On November 20, 2020, Defendants filed a written motion for the revocation of Attorney Joffe's pro hac vice admission.  Doc. No. 414.  The motion also sought monetary sanctions and an order that Mr. O'Grady not be required to appear for another deposition.  Id. at 1–2.  The memorandum in support of Defendants' motion detailed much of the conduct described above, including Attorney Joffe's conduct in depositions, disregard for Local Rules, and failure to obey court orders.  Doc. No. 415.  Plaintiffs opposed the Motion in a memorandum signed only by Attorney Joffe, although lawyers from Quinn Emmanuel had recently filed their appearances on behalf of Plaintiffs.  Doc. No. 422.  As he had in response to virtually all of the conduct described herein, Attorney Joffe rejected any misconduct or error. He accepted no responsibility

---

[7] Although only the most relevant portions of the colloquy are excerpted here, the entire exchange is relevant.  See Doc. No. 410 at 28–34.

for his role in any of the relevant events.  He offered no apology or expression of remorse for the disrespectful treatment of deposition witnesses, opposing counsel and the Court.[8]  Rather, he responded by stating "there is simply no 'disciplinary matter'' and no litigation 'misconduct' by Attorney Joffe to refer . . .[or] otherwise to discipline." Id. at 4.  Attorney Joffe reiterated this position throughout his opposition:

- Attorney Joffe accused Defendants of citing "made-up grievances" designed to avoid the deposition of Mr. O'Grady. Id.

- Attorney Joffe viewed the reasonable and appropriate suspension of the O'Grady deposition as "fulfilling" his [Attorney Joffe's] "prophesy" that after he raised the Fifth Amendment O'Grady would cease testifying.[9] Id. at 9.

- Attorney Joffe described the course of the litigation as only involving the "Court's stated unhappiness" with him, which he "fully expects to rectify by exposing Defendants' running cover-up and fraud on the Court."[10] Id. at 11.

- Attorney Joffe touted that the defendants in Youngblood-West v. AFLAC, No. 4:18-CV-83 (CDL) (M.D. Ga. filed May 1, 2018), withdrew the Rule 11 motion they previously

---

[8] Another federal judge, U.S. District Judge Clay D. Land of the U.S. District Court for the Middle District of Georgia, made the following comment about Attorney Joffe in a case unrelated to this one:

> Rather than acknowledge the possibility that his record thus far may be due to the weakness of his legal arguments, Mr. Joffe blames his lackluster performance on the alleged personal bias of the undersigned. Like the Little League parent who blasts the umpire when his eleven-year old takes a third strike, Mr. Joffe wants another judge. Just as that umpire must remain in the game, so too must this judge.

Youngblood-West v. Aflac Inc., No. 4:18-CV-83 (CDL), 2018 WL 5019391, at *1 (M.D. Ga. Oct. 16, 2018).

[9] This may suggest that Attorney Joffe's statements at the O'Grady deposition were planned, intentional acts to threaten criminal prosecution for advantage in a civil case, rather than a loss of composure in the heat of the moment.  Attorney Joffe's repeated assertion that a witness in a civil case who testifies on a topic thereby waives the witness's right to assert the Fifth Amendment as a shield against further testimony in a subsequent criminal prosecution speaks for itself.

[10] The Court is unaware of any pending claims that Defendants have perpetrated a fraud on the Court or any pending or sustained claims that Defendants have committed misconduct in the defense of this lawsuit.  As for Attorney Joffe's conduct of the lawsuit, the record speaks for itself.

filed against Attorney Joffe, Doc. No. 422 at 13–14, ignoring both that no one had cited that Rule 11 motion in this case and Judge Hand's findings about Attorney Joffe in rejecting recusal.

- Attorney Joffe responded to Defendants' assertion that his conduct at the O'Grady deposition was "beyond the pale" with the simple, conclusory assertion that "it [was] not", id. at 12; so that there was no doubt about this position, he went on to say, "[t]here was certainly nothing 'beyond the pale' or unethical in Attorney Joffe's conduct of Mr. O'Grady's deposition," id. at 15.

In sum, to Attorney Joffe, every aspect of his conduct in this litigation conformed to the rules of professional responsibility; thus, he urged the Court to deny the motion for referral as filed "in bad faith" for an improper purpose, "sanction Defendants and their counsel," and "compensate Plaintiffs for the costs incurred in defending against Defendants' frivolous motion." Id. at 18.

## II.   LEGAL STANDARD

Local Rule 83.6.1 provides that the rules of professional conduct for attorneys practicing in this court shall be the Massachusetts Rules of Professional Conduct, adopted by the Massachusetts Supreme Judicial Court, as set forth as Rule 3:07 of that court.  That rule also requires "[a]ll attorneys who are admitted or authorized to practice before this court [to] comply with its rules of professional conduct in all matters they handle before this court." L.R. 83.6.1(d). Local Rule 83.6.3 states that an attorney may be disciplined for certain types of misconduct, including violation of the rules of professional conduct or "willful, recurrent, or egregious violation of these local rules or any order of the court." L.R. 83.6.3(2).

Local Rule 83.6.5 sets out procedures for screening and referral of matters where attorney misconduct is suspected.  Under the rule, this Court, as the judicial officer who presided over the matter in which the misconduct allegedly occurred, may refer the potential misconduct to the presiding judge "[i]f the allegations of attorney misconduct are reasonably plausible and potentially serious."  L.R. 83.6.5(b).

III.    <u>DISCUSSION</u>

The Court concludes that Attorney Joffe's conduct, as described above, plainly renders Defendants' allegations of misconduct both "reasonably plausible and potentially serious."  L.R. 83.6.5(b).  Throughout this case Attorney Joffe meets virtually every instance[11] of his own error or misconduct as he has in response to this motion to refer—with incendiary, unsupported allegations of lies by his opponents coupled with blanket rejections of responsibility for his own conduct.  The Court refers the matter to the presiding judge for consideration of possible disciplinary action because (1) the recited facts evidence a pattern of Attorney Joffe consistently refusing to respect and participate in the adversary process in the manner required of a lawyer, (2) of the sheer volume of examples of plausible misconduct that are demonstrated in the record of this case since Attorney Joffe was permitted to enter his appearance here, and (3) Attorney Joffe's responses to the allegations of his own misconduct, which suggests a refusal to submit either to the primacy of truth or the judicial process.  In the Court's judgment, at least the following rules are implicated by Attorney Joffe's conduct in the ways described summarily below.

First, Rule 1.1 of the Massachusetts Rules of Professional Conduct provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."  Attorney Joffe's conduct described above, under the applicable referral standard, suggests violation of that rule by repeatedly failing to review discovery, filing motions predicated upon superseded protocols, making inaccurate factual assertions without citation, and

---

[11] Once, regarding the spam emails, Attorney Joffe conceded that what he did was wrong, but only after substantial wrangling.

seemingly failing to read the Orders of the Court.  Mistakes in litigation are inevitable.  But, although private civil litigants are not entitled either to ideal or even the best available representation, they are entitled to competent representation, which requires "thoroughness" and the "preparation reasonably necessary" for the case.

Second, Rule 3.4(c) of the Massachusetts Rules of Professional Conduct provides that "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal . . . ." Despite repeated warning, Attorney Joffe failed to include supporting memoranda with motions, see L.R. 7.1(b)(1), attempted to serve as Plaintiffs' counsel without local counsel as required by the Rules, see L.R. 83.5.3, repeatedly failed to confer with opposing counsel as required for the filing of any motion and specifically for the filing of discovery motions, despite repeated specific warnings to do so, and failed to comply with other rules governing discovery motions, see L.R. 7.1(a)(2); L.R. 37.1(a), (b).  Similarly, although Attorney Joffe was repeatedly warned to conform Plaintiffs' second amended complaint to Federal Rules of Civil Procedure 8 and 9, which require "a short and plain statement of the claim" and that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," he nevertheless again filed the same proposed complaint.  See Doc. No. 95 at 14.

Third, Rule 3.4(d) of the Massachusetts Rules of Professional Conduct provides that "[a] lawyer shall not . . . fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party."  Attorney Joffe repeatedly failed to comply with the Court's orders governing discovery in this matter, including by missing deadlines, failing to produce appropriately relevant documents, and failing to maintain relevant documents after litigation was reasonably anticipated.  His production of hundreds of thousands of pages, well after the applicable discovery deadline and comprised largely of plainly nonresponsive spam,

raises a serious question about his good faith in compliance with discovery obligations, particularly given his admission to the Court that the production was improper.  He sought a wholesale extension of discovery deadlines after mediation months after the appropriate time to do so without providing good cause for the delay.  His conduct with respect to the service of Alexander Pekar unnecessarily consumed both judicial resources and Defendants' resources.  It also suggests improper gamesmanship.

Fourth, Rule 8.4(h) of the Massachusetts Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on his or her fitness to practice law."  The preamble to the Massachusetts Rules also requires lawyers to "demonstrate respect for the legal system and for those who serve it, including . . . other lawyers."[12]  During depositions, Attorney Joffe repeatedly failed to demonstrate basic professionalism and respect for witnesses as well as the other attorneys present.  Attorney Joffe's conduct at depositions seriously called into question his ability to approach civil litigation with appropriate professionalism and respect.

Fifth, Rule 3.4(b) of the Massachusetts Rules of Professional Conduct provides that "[a] lawyer shall not . . . counsel or assist a witness to testify falsely . . . ."  Attorney Joffe's failure to prevent and to respond to Mr. Styller's communication with Mr. Raina during Mr. Raina's deposition call into question his judgment respecting witness testimony.

Sixth, Rule 3.4(h) of the Massachusetts Rules of Professional Conduct provides that "[a] lawyer shall not . . . threaten to present criminal . . . charges solely to obtain an advantage in a

---

[12] New York, the state in which Attorney Joffe is licensed to practice law, has a similar requirement in its own rules of professional conduct. See New York Rule of Professional Conduct 1.3, Comment [1] (noting that while lawyers must zealously represent their clients, "the lawyer should not use offensive tactics or fail to treat all persons involved in the legal process with courtesy and respect").

private civil matter." Attorney Joffe's threats to Mr. O'Grady of potential criminal prosecution

may have specifically violated this rule.

Finally, Rule 3.5(d) of the Massachusetts Rules of Professional Conduct provides that a

"lawyer shall not . . . engage in conduct intended to disrupt a tribunal." Attorney Joffe

repeatedly demonstrated lack of respect for the Court at hearings. He repeatedly interrupted the

Court, disrupting otherwise orderly proceedings, despite several warnings not to do so.

IV.    CONCLUSION

For the foregoing reasons, Defendants' motion seeking Attorney Joffe's referral and other

sanctions, Doc. No. 414, is ALLOWED IN PART to the extent that (1) the Court refers this

matter of potential attorney misconduct to the presiding judge for review and whatever, if any,

possible further action under Local Rule 83.6.5, and (2) in light of what occurred at James

O'Grady's deposition and considering the totality of the circumstances, Plaintiffs may not

require Mr. O'Grady to appear for another deposition. The motion is otherwise DENIED.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge