# EXHIBIT A

<u>IN THE UNITED STATES DISTRICT COURT</u>
███████████████████████████████████

——————————————————————————
                                            )
███████████████████                         )
                                            )
                Plaintiff,                  )
        v.                                  )   No. ████████████████
                                            )
████████████████████████████               )
                                            )
                Defendant.                  )
——————————————————————————)

<u>**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**</u>

Plaintiff, through its undersigned counsel, respectfully moves this Court for an order

compelling Defendant ████████████, to appear for deposition and to answer questions and

produce documents to which he had asserted his Fifth Amendment privilege, specifically the

questions about the current address and contact information for ████████████, a non-

party witness held in contempt by this Court for refusing to appear and testify pursuant to a

subpoena. As demonstrated below, Defendant has not met his burden of establishing both the

existence of the Fifth Amendment privilege and its non-waiver, and should be compelled to

disclose ████████████ address and contact information forthwith.

<u>**FACTUAL BACKGROUND**</u>

During his deposition on ████████████ (the "Second Deposition"), Defendant invoked

the Fifth Amendment privilege and refused to answer certain questions about the current

whereabouts of ██████████████████████, who is currently in violation of a

contempt order issued by this Court.

In particular, ████████████ refused to answer certain questions related to ████████

████████ whereabouts and his contact information during the Second Deposition invoking

the Fifth Amendment privilege, while also providing answers to select deposition questions in the same line of inquiry before and after invoking the privilege.

Thus, ███████████ first invoked the Fifth Amendment privilege in response to the question "When is the last time you spoke to ███████████?" (Transcript of the First Deposition ("Tr."), attached as Exhibit A hereto) (Tr. 7/12-16); and also invoked it in refusing to answer such questions as "Have you had any text messages with ███████████ in the last three months?" (Tr. 9/24-10/1); "What means of communication have you had with ████ ███████ in the last six months?" (Tr. 13/12-15); "Have you had any text messages with ██ ███████████ in the last three months?" (Tr. 9/24-10/1), "Do you have ███████████ telephone number?" (Tr. 17/10-15) and other similar questions throughout the Second Deposition.

However, ███████████ also provided answers during his Second Deposition to select questions along the same line of inquiry, cherry-picking which questions to answer and which to refuse based on the Fifth Amendment privilege, and/or invoking the privilege while actually answering the question in the same breath:





Prior to his Second Deposition, Defendant had actively participated in this Action since its commencement in 2016, responding to discovery requests and voluntarily testifying during his first deposition on ███████████ (the "First Deposition") – all without invoking the Fifth Amendment privilege. See, e.g., Exh A, Tr. 14/21-25 – 15/1 ("Q: In the past you have never invoked the 5th amendment in this case. A: Right. Q: Right? A: Correct.").[1]

---

[1] Prior to his Second Deposition, Defendant also spoke with the U.S. Marshall looking for ███ ██████ to execute the contempt order against him, and did not recall invoking the Fifth Amendment privilege at that time. (Tr. 22/16-17 -23/1-3) ("Q: Did you speak with a US Marshall regarding ██████████? A: Yes. . . Q: And did you invoke the 5th Amendment when you spoke to this U.S. Marshall? A: I don't recall.").

In particular, during that First Deposition, ████████████ had answered questions and volunteered information on the subjects of ████████████ whereabouts and Defendant's contacts with ████████████, which very subjects he subsequently cited as "incriminating" for purposes of invoking the Fifth Amendment during his Second Deposition.

In particular, during his First Deposition, Defendant had voluntarily testified on the subjects of ████████████ prior and current whereabouts (Exh. B, Tr. 85/22-86/13; 155/9-11; 180-82); the post box office that ████████████ used for business correspondence (providing its number and address) (Exh. B, Tr. 76-77, 144-145); ████████████ place of work (Exh. B, Tr. 130) -- even volunteering that ████████████ ████████████ in Manhattan on the day of the First Deposition (Exh. B, Tr. 127-128). ████████████ also voluntarily testified about the means and the substance of his numerous communications with ████████████ (e.g., Exh. B, Tr. 20-21, 37, 92, 94, 95, 181-82).

████████████ also testified voluntarily during his First Deposition on other matters with respect to which he then invoked the privilege during his Second Deposition. Compare Exh. A, Tr. 20/14-18 ("Q: What, if anything, did you do to help ████████████ find a new residence after he moved out of ████████████? A: I refuse to answer that question pursuant to my 5th Amendment privilege.") with Exh. B, Tr. 86/4-13 ("Q: Are you helping him look for an apartment to buy? A: I am obviously not going to be the broker involved because of the pending litigation, but I am discussing – I am looking for listings and discussing apartment with him. Q: And you're doing that – and so you're spending your valuable time assisting him in trying to find an apartment to buy. Correct? A: Yes.").

## ARGUMENT

### A.  Legal standards of the Fifth Amendment Waiver

The Fifth Amendment privilege against self-incrimination applies "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used," Kastigar v. United States, 406 U.S. 441, 444-45 (1972); the privilege applies at trial and during the discovery process. See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976).

In civil proceedings, the use of the Fifth Amendment can substantially prejudice an adverse party, depriving it of "a source of information that might conceivably be determinative in a search for the truth." S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 191 (3d Cir. 1994). It is for this reason that the trial court must carefully balance the interests of the party claiming the protections afforded by the Fifth Amendment and the opposing party's entitlement to equitable treatment. Id. at 192.

"[B]ecause all parties -- those who invoke the Fifth Amendment and those who oppose them -- should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege." United States v. 4003-4005 5th Ave., 55 F.3d 78, 83-84 (2d Cir. 1995) (internal citations omitted). Accordingly, upon a timely request, the court should explore all possible measures in order to "select that means which 'strikes a fair balance . . . and . . . accommodates both parties.'" Id. at 84 (citation omitted). "[I]t should give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties." Id.

The Fifth Amendment privilege is not self-executing, <u>Roberts v. United States</u>, 445 U.S. 552, 559 (1980), and can be waived by failing to invoke it in a timely manner and by disclosure of incriminating evidence. <u>Rogers v. United States</u>, 340 U.S. 367, 373 (1951); <u>Maness v. Meyers</u>, 419 U.S. 449, 466 (1975) (the privilege "can be affirmatively waived, or lost by not asserting it in a timely fashion.").

As the Supreme Court elaborated in <u>Rogers</u>, 340 U.S. at 373, defendant "cannot invoke the privilege where response to the specific question in issue here would not further incriminate her. ***Disclosure of a fact waives the privilege as to details.*** As this Court stated in <u>Brown v. Walker</u>, 161 U.S. 591, 597 (1896): 'Thus, if the witness himself elects to waive his privilege . . . he is not permitted to stop, but must go on and make a full disclosure.' Following this rule, federal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details.") (emphasis added throughout unless otherwise stated). <u>See</u> <u>also</u> <u>Brock v. Gerace</u>, 110 F.R.D. 58, 63 (D.N.J. 1986) (when responding to discovery, a civil litigant can lose his Fifth Amendment privilege against self-incrimination by not asserting it timely).

The party who claims the privilege against self-incrimination has the burden of establishing the existence of the privilege, <u>see</u> <u>In re Grand Jury Subpoena</u>, 973 F.2d 45, 50 (1st Cir. 1992), and the burden of establishing its non-waiver. <u>Brock</u>, 110 F.R.D. at 63 (D.N.J. 1986). In establishing the existence of the privilege, the issue is whether "the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." <u>Marchetti v. United States</u>, 390 U.S. 39, 453, 88 S. Ct. 697, 705, 19 L. Ed. 2d 889 (1968). The privilege against self-incrimination applies only in "instances where the witness has reasonable cause to apprehend danger." <u>Hoffman v. United States</u>, 341 U.S. 479, 486 (1951).

The court must determine if the deponent's fear of self-incrimination is well-founded. Mason v. United States, 244 U.S. 362 (1917). In determining reasonable fear of self-incrimination, a court must not look at the likelihood of prosecution, but the possibility of prosecution. See Hoffman, 341 U.S. 479. Courts do not recognize fanciful and imaginary fears of self-incrimination as constituting a possibility of prosecution. Mason, 244 U.S. 362.

As a waiver may occur in the absence of intent, the intent to waive one's privilege need not be shown. Id. (citing In re Grand Jury Investigation of Ocean Transportation, 604 F.2d 672, 675 (D.C. Cir. 1979)). Generally, the more a party engages in the litigation, such as by propounding discovery, the more likely the party is to be found to have waived the Fifth Amendment rights against self-incrimination. United Automobile Ins. Co. v. Veluchamy, 747 F. Supp. 2d 1021, 1026-7 (N.D. Ill. 2010).

The question of waiver in any given case depends on the particular facts and circumstances surrounding the case. See Moran v. Burbine, 475 U.S. 412, 421 (1986). A waiver can be inferred when "(1) the witness's prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination." Klein v. Harris, 667 F.2d 274, 287 (2d. Cir. 1981).[2]

As the Supreme Court stated in Mitchell v. United States, 526 U.S. 314, 321 (1999):

> It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-

---

[2] As another District Court in this Circuit observed in Thorne v. Loews Philadelphia Hotel, Case No. 2:15-cv-03837-GEKP, ECF No. 80, Slip Op. at 7 (E.D. Pa. July 27, 2016) (attached as Exhibit C hereto), "although the Klein formulation has not been expressly adopted by the Third Circuit Court of Appeals, it has gained widespread acceptance by other courts," citing In re Gi Yeong Nam, 245 B.R. 216 (Bankr. E.D. Pa. 2000).

incrimination when questioned about the details. See Rogers v. United States, 340 U.S. 367, 373 (1951). The privilege is waived for the matters to which the witness testifies, and the scope of the "waiver is determined by the scope of relevant cross-examination," Brown v. United States, 356 U.S. 146, 154-155 (1958). "The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry," id., at 155. . . .

The justifications for the rule of waiver in the testimonial context are evident: *A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry*. As noted in Rogers, a contrary rule "would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony," 340 U.S. at 371.

**B.  Defendant has not established a well-founded fear of prosecution from the disclosure of ▇▇▇▇▇▇▇▇▇▇ current address and contact information.**

As a threshold matter, Defendant has not established a real and well-founded -- as opposed to imaginary or remote -- fear of prosecution from disclosing ▇▇▇▇▇▇▇▇ current address and contact information.

As the Supreme Court instructed in Mason, 244 U.S. at 364-65: "When a question is propounded, *it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law*." Here, ▇▇▇▇▇▇▇ may disclose ▇▇▇▇▇▇▇ address and contact information without violating the privilege.

*First*, ▇▇▇▇▇▇▇ voluntarily testified about his knowledge of ▇▇▇▇ ▇▇▇▇ current address (Exh. A, Tr. 27/7-11 ("Q: Do you have, although you're not going to disclose it, do you have a specific address for ▇▇▇▇▇▇▇? A: Yes.")) -- but claimed the Fifth Amendment privilege with respect to the specific address itself (while also disclosing that the address was in the United States but not in New York).

But "[s]ince the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure, petitioner cannot invoke the privilege where response to

the specific question in issue here would not further incriminate her. Disclosure of a fact waives the privilege as to details." Rogers, 340 U.S. at 372-73. Indeed, "[t]he constitutional *protection against self-incrimination 'is confined to real danger and does not extend to remote possibilities* out of the ordinary course of law,'" so that "*a merely remote and naked possibility*, out of the ordinary course of the law and *such as no reasonable man would be affected by*, should not be suffered to obstruct the administration of justice." Mason, 244 U.S. at 365-66 (internal citations omitted).

████████████████ purported fear of prosecution from disclosing ████████████████ current address and contact information, having voluntarily testified as to his knowledge of that information, at best presents a "remote and naked possibility . . . such as no reasonable man would be affected by," id., and should not be permitted to obstruct Plaintiff's discovery.

*Second*, To the extent ████████████ is concerned that his answers about ████████ ████████ whereabouts may incriminate the latter, this is not a proper ground for the Fifth Amendment privilege. As the Supreme Court stated in Rogers, 340 U.S. at 371: "the decisions of this Court are explicit in holding that the privilege against self-incrimination 'is solely for the benefit of the witness,' and 'is purely a personal privilege of the witness.' Petitioner expressly placed her original declination to answer on an untenable ground, since *a refusal to answer cannot be justified by a desire to protect others from punishment*" (internal citations omitted).

Accordingly, Defendant has failed to meet his threshold burden of establishing the Fifth Amendment privilege with respect to Plaintiff's questions about ████████████████ address and contact information.

**C. Defendant has waived any Fifth Amendment privilege and should be compelled to testify.**

Defendant has also failed to carry out his burden of demonstrating a non-waiver of the Fifth Amendment privilege even had the privilege been applicable here. Defendant has waived any privilege with respect to the subject matters at issue because of his partial answers during the Second Deposition, as well as his voluntarily provided testimony on these subject matters in the First Deposition.

In particular, ████████████ voluntarily testified during the Second Deposition about his knowledge of ████████████ address and contact information (Exh. A Tr. 27/7-11, 17/5-8, 17/10-13), but withheld the address and contacts themselves, invoking the Fifth Amendment privilege. However, as the Supreme Court stated in Brown, 161 U.S. at 597, "where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details." ████████████ disclosure of the details of ████████████ address and contact information at best presents "a merely remote and naked possibility [of prosecution] such as no reasonable man would be affected by" where ████████████ had waived the privilege as to his knowledge and possession of that information by voluntarily testified about it, his knowledge of information. Accordingly, "the privilege cannot be invoked to avoid disclosure of the details" of ████████████ current whereabouts. Brown, 161 U.S. at 597.

Indeed, the first prong of the Klein test derives from the idea that privilege should not "furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition." Id. at 288 (internal quotation marks omitted) (quoting United States v. St. Pierre, 132 F.2d 837, 840 (2d Cir. 1942)). Defendant's cherry-picking his answers to select questions during the Second Deposition, while also voluntarily testifying to those questions

during the First Deposition, satisfies the first <u>Klein</u> prong. <u>See also</u> <u>Mitchell v. United States</u>, 526 U.S. at 321 ("A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry.")

With regard to the second <u>Klein</u> prong, for a court to find that a witness had reason to know that his statements would be interpreted as a waiver, the statements must have been: (a) "testimonial," meaning that they were voluntarily made under oath in the context of the same judicial proceeding, and (b) "incriminating," meaning that they did not merely deal with matters "collateral" to the events surrounding the commission of the crime, but directly inculpated the witness on the charges at issue. <u>Klein</u>, 667 F.2d at 288 (citations omitted).

There is no doubt that Defendant's earlier statements on the subject matter of ███████ ███████'s whereabouts and contact information were "testimonial" because they were "voluntarily made under oath in the context of the same judicial proceeding" – <u>i.e.</u>, in the earlier First Deposition and in the course of Defendant's partial answers in the Second Deposition in the same matter. As to the second <u>Klein</u> prong, ███████ himself asserted the Fifth Amendment privilege with respect to the withheld factual details regarding ███████ location and contacts, claiming these facts may be incriminating. <u>See</u>, <u>e.g.</u>, Exh. A, Tr. 13, 15-16, 19 (asserting that answering questions regarding his means of communication with ███████ ███████, ███████ whereabouts or his phone number might incriminate Defendant). It is well-established that the witness need not establish the precise manner in which he will incriminate himself by responding to questions, as this would make the privilege meaningless. <u>See</u> <u>Hoffman v. United States</u>, 341 U.S. 479, 486-87 (1951).

A recent decision of another District Court in this Circuit, <u>Thorne v. Loews Philadelphia Hotel</u>, Case No. 2:15-cv-03837-GEKP, ECF No. 80, Slip Op. (E.D. Pa. July 27, 2016), is on all fours with this case. There, defendant invoked his Fifth Amendment privilege against self-incrimination during a deposition but only after providing answers to select questions. Plaintiffs then moved to compel defendant's deposition and testimony, arguing that because of his partial answers he has waived his Fifth Amendment privilege.

The court agreed that defendant's deposition testimony satisfied both prongs of the <u>Klein</u> test and therefore was sufficiently incriminating to constitute a waiver of his Fifth Amendment privilege. The court in <u>Throne</u> heeded the Supreme Court's warning in <u>Rogers</u>, 340 U.S. at 371, against "open[ing] the way to distortion of facts by permitting a witness to select any stopping place in the testimony," and stated that "if Mr. McNeill is permitted to invoke his privilege against self-incrimination after having already provided information about his interaction with Ms. Thorne, essentially 'cherry-picking' his opportunities to give testimony, the facts of the very matter at issue will be left distorted and unclear." "A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and the integrity of the factual inquiry." <u>In re Gi Yeong Nam</u>, 245 B.R. at 235 (quoting <u>Mitchell v. United States</u>, 526 U.S. 314 (1999)).

So is the case here, where ████████ had voluntarily testified about his knowledge of ██████████████ current and prior addresses, and his means of communication with ███ ██████████ during his First Deposition, and also provided answers to select questions on these very subjects during his Second Deposition.

The Court in <u>Thorne</u> also held that "Mr. McNeill had reason to know that his answers to deposition questions could constitute a waiver of the privilege against self-incrimination. In fact,

Mr. McNeill affirmatively stated that he understood that his answers to deposition questions could result in a waiver of the privilege." The Court held that defendant had "the burden to establish the existence of the privilege and, in cases such as this one, where there is a dispute as to waiver, the existence of its non-waiver," and found that defendant in that case had failed to satisfy that burden.[3]

Here, as in Thorne, ███████████████████████ and represented by counsel during his deposition, had reasons to know that his answers to select questions could constitute a waiver, as the waiver issue was expressly discussed during his Second Deposition. See, e.g., Exh. A, Tr. 14-15.

### D. The "act of production" protection does not apply to the requested documents.

Defendant likewise may not invoke the Fifth Amendment privilege to refuse producing the requested documents (Defendant's recent correspondence with ████████████ and phone bills) that may contain ███████████ address and contact information. It is a "settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." United States v. Hubbell, 530 U.S. 27,

---

[3] The Court in Throne expressly distinguished Cartier v. Micha, Inc., where the court denied plaintiff's motion to compel defendant's deposition testimony after defendant partially answered deposition questions before invoking his Fifth Amendment privilege. Cartier, No. 06-4699, 2008 WL 2061386 (S.D.N.Y. May 12, 2008). During his deposition, defendant in Cartier answered plaintiff's questions with varying specificity, invoking the Fifth Amendment privilege as to some questions while freely answering others, leading the court to conclude that defendant's varied responses regarding the transactions in question created a significant danger of distortion, satisfying Klein's first prong. However, the court also found that defendant did not have reason to know that his responses to questions about those transactions would be construed as a waiver of his Fifth Amendment privilege (id. at *3), and because plaintiff failed to satisfy Klein's second prong, the court determined that defendant had not waived his privilege. Id. at *5.

35-36 (2000). For example, in <u>Fisher v. United States</u>, 425 U.S. 391, 410 (1976), the Supreme

Court ruled that taxpayers' Fifth Amendment privileges against self-incrimination did not shield

them or their attorneys from complying with IRS summonses directing the production of tax

records prepared by the taxpayers' accountants. The Court stated that "the Fifth Amendment

does not independently proscribe the compelled production of every sort of incriminating

evidence but applies only when the accused is compelled to make a testimonial communication

that is incriminating." <u>Id.</u> at 408. Since "the preparation of all of the papers sought . . . was

wholly voluntary, . . . they cannot be said to contain compelled testimonial evidence, either of

the taxpayers or of anyone else." <u>Id.</u> at 409-10 (footnote omitted). The court thus concluded that

the summonses were enforceable unless the act of producing the documents was itself subject to

a valid Fifth Amendment privilege. <u>Id.</u> at 410.

In <u>Andresen v. Maryland</u>, 427 U.S. 463 (1976), the Supreme Court reiterated that any

self-incrimination analysis must focus on the voluntariness of the communication at issue.

Rejecting a claim that the Fifth Amendment was violated by the use against a criminal defendant

of personal business records seized pursuant to a lawful search, the court reasoned that because

the records had been "voluntarily committed to writing," and because the defendant had not been

forced to produce or authenticate them, use of the records did not compel the defendant to

incriminate himself. <u>Id.</u> at 473.

In <u>United States v. Doe</u>, 465 U.S. 605 (1984), the Supreme Court reaffirmed its holding

in <u>Fisher</u> and ruled that the Fifth Amendment does not protect the contents of an individual's

business records in his own possession holding that because the documents at issue were

prepared voluntarily, they "'cannot be said to contain compelled testimonial evidence' in and of

themselves." <u>Id.</u> at 612 n.9 (citation omitted). Although the documents at issue were business

14

records, the court stated broadly that "[i]f the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged." Id. at 612 n.10. In United States v. Hubbell, the Supreme Court again reiterated that a person could not avoid compliance with the subpoena served on him merely because the demanded documents contained incriminating evidence, whether written by others or voluntarily prepared by himself. 530 U.S. at 36.

The Second Circuit has clearly indicated that "[b]ecause no compulsion is present where documents are voluntarily prepared . . . the Fifth Amendment does not protect the contents of voluntarily prepared documents, business or personal." In re Grand Jury Subpoena Dated July 6, 2005, 256 Fed. Appx. 379, 381 (2d Cir. 2007), cert. denied, 553 U.S. 1094 (2008) (citations omitted); see also In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992, 1 F.3d 87, 93 (2d Cir. 1993), cert. denied, 510 U.S. 1091 (1994) (holding that the Fifth Amendment does not protect the contents of voluntarily prepared, non-business documents such as calendars).

While no Fifth Amendment privilege extends to contents of voluntarily prepared documents, the **act of producing** these documents in response to a subpoena might require incriminating testimony, justifying the application of the Fifth Amendment privilege. See United States v. Doe, 465 U.S. 605, 612 (1984) ("Although the contents of a document may not be privileged, the act of producing the document may be."); SEC v. Waltzer & Assocs., No. 96-6261, 1997 U.S. App. LEXIS 23830, at *7-8 (2d Cir. Sept. 10, 1997) ("If subpoenaed documents were prepared voluntarily, only the act of their production is protected by the Fifth Amendment."). The Supreme Court stated that the act of producing documents in response to a subpoena may have a compelled testimonial aspect where the act "itself may implicitly communicate 'statements of fact.'" U. S. v. Hubbell, 530 U.S. at 36.

15

The Supreme Court explained that the act of production could constitute protected testimonial communication because it might entail implicit statements of fact: by "producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." Id. The Second Circuit stated that the "act of production privilege" is limited to two situations: first, "if the existence and location of the subpoenaed papers are unknown to the government" and, second, "where production would 'implicitly authenticate' the documents." In re Grand Jury Subpoena Dated July 6, 2005, 256 Fed. Appx. at 381. Still, the production may not be refused if government can "demonstrate with reasonable particularity that it knows of the existence and location of the subpoenaed documents. Id. at 381-82.

For purposes of the "act of production" privilege, "implicit authentication occurs when an individual who receives a summons demanding production of documents complies with the summons and thereby implicitly testifies that he owns or at least possesses the documents." United States v. Fox, 721 F.2d 32, 38 (2d Cir. 1983). The court explained that a witness's production may implicitly authenticate the documents as his own and thereby provide a link in a chain of evidence that might incriminate him, and therefore, the potential for self-incrimination through "implicit authentication" implicates Fifth Amendment protection. Id. at 38-39.

The "act of production" protection does not apply in this case because Defendant has already voluntarily testified about his knowledge of the facts – the very knowledge and "implicit identification" that the "act of production" may reveal and the "act of production" doctrine is designed to guard against. Here, the information about Mr. Von Furstenberg's whereabouts and contacts is known to Defendant, as he had voluntarily testified to his knowledge during his

Second Deposition. <u>See</u> Exh. A, Tr. "Q: Do you have, although you're not going to disclose it, do you have a specific address for Mr. Von ████████? A: Yes." (Tr. 27/7-11).

   Accordingly, these requested documents are not protected by the "act of production" privilege because ████████ had already admitted that he possesses the information sought through these document requests.

**CONCLUSION**

   Because Defendant has not carried out his burden of establishing the existence of the Fifth Amendment privilege with respect to ████████ current address and contact information, or his burden of establishing its non-waiver, Plaintiff respectfully submit that its motion to compel Defendant ████████ to disclose that information should be granted.

Respectfully Submitted,

17