# EXHIBIT B

# *Styller v. HPFS*, No. 1:16-CV-10386

## Before the Honorable Leo T. Sorokin,

## U.S. District Judge

---

# PLAINTIFFS' OPENING STATEMENT



**July 9, 2020**

# Summary of Plaintiffs' evidence of counterfeiting



In 2010, HPFS India leased the equipment to TATA for the Commonwealth Games.

Inspira imported the equipment to India; TATA returned the equipment in 2011. Defendants did not inspect it for authenticity before or after the lease.

Inspira did not provide original importation documents with serial numbers of the imported equipment to Defendants despite multiple requests.

HPFS India sold one quarter of the equipment to ICT in December 2011 as genuine "H3C," the rest to TT Global in 2012.

**25%**

ICT's parts shipped to China (2012)

Tested by H3C on behalf of HPFS India (2013)

Incarceration and criminal investigation of ICT's sales associates; seizure of the transceivers; H3C's and Defendants' statements to the PSB that the seized transceivers were counterfeit based on fake trademark logos; holding up RMA refund to ICT while demanding release from Individual Plaintiffs (2013).

**75%**

TTG's parts shipped to Dubai (2012)

Tested by H3C at HPFS' request (2013)

Defendants concealed test results from the PSB and ICT; secretly instructed TT Global to destroy its transceivers due to their "questionable" nature and origination; discussed paying TT Global $200K for destroying them (2013).

# Second Amended Complaint

ALEXANDER STYLLER,
COMMUNICATIONS & T
INC., JADE CHENG; JASO
CAROLINE MARAFAO C
CHENG, CHANGZHEN N
MEIXIANG CHENG, FAN
CHANGHUA NI,

v.

HEWLETT-PACKARD FI
SERVICES COMPANY, H
FINANCIAL SERVICES (
LIMITED, HP INC., HEWI
ENTERPRISE COMPANY

Plaintiffs, by their undersigned couns

and other wrongdoings against Defendants a

equipment to Plaintiffs expressly for resale p

imprisonment of the Plaintiffs reselling that

1.    Plaintiff Alexander Styller is

Communications & Technologies, Inc. ("ICT

of Massachusetts, with the business address

Massachusetts 02148.

2.    Plaintiff ICT is a Massachuse

Street, Malden, Massachusetts 02148. Since

---

1. **The counterfeit nature of the Equipment revealed;**
   **ICT's Chinese offices raided; the Individual Plaintiffs arrested.**

52.    In the meantime, Plaintiffs continued to use their best efforts to resell the first installment of the Equipment in China. In December 2012, however, representatives of H3C lodged a complaint with the local police accusing Plaintiffs in marketing counterfeit H3C products because the transceivers contained counterfeit H3C trademark logos, without informing the police that the Equipment was sold to ICT by H3C's affiliates, the HPFS Defendants, as genuine H3C Equipment.

225.    In sum, from December 2012 until August 2014, H3C – the manufacturer and the exclusive trademark owner of the H3C brand and trademark logo, and thus *the ultimate authority* on the subject of counterfeiting with respect to its own products – made several statements to the police (a) unequivocally confirming that the seized transceivers were counterfeit based on H3C's visual inspection of the security features of H3C trademark logos, (b) explaining why neither the electronic power-on test nor the transceivers' serial product numbers could be used to challenge the results of its visual inspection, and (c) explaining that HP had no license rights to its trademark (let alone any authority to dispute its words on the authenticity of its own trademarked products).

# Origination of the Equipment (emails between HPFS India and Inspira, 2011)

Message

From:       Goodwin, Bevan [/O=COMPAQ/OU=AP2/CN=RECIPIENTS/CN=GOODWINB]
Sent:       7/26/2011 1:25:43 AM
To:         'Manoj Kanodia' [manoj.kanodia@inspira.co.in]
CC:         Bartley, Kevan [kevan.bartley@hpe.com]; Silvestri, James [james.silvestri@hpe.com]; West, Ross
            [ross.west@hp.com]; Sanjaykumar Dhoot [sanjaykumar.dhoot@inspira.co.in]; O'Grady, Jim [jim.ogrady@hpe.com]
Subject:    RE: Original importation documentation for CWG TCS equipment returning from lease.

Dear Manoj, From our initial discussions going back to late 2010, yourself and Sanjaykumar have both
provided a commitment to provide the necessary import documentation that we will require in order to
complete a successful re-export of the H3C Comm Games lease products. This commitment has been reiterated
by yourself and sanjaykumar on more than one occasion since those initial discussions.
Unfortunately, the committed handover dates for the documentation has been missed on more than 2
occasions.

Dear Manoj, From our initial discussions going back to late 2010, yourself and Sanjaykumar have both
provided a commitment to provide the necessary import documentation that we will require in order to
complete a successful re-export of the H3C Comm Games lease products. This commitment has been reiterated
by yourself and Sanjaykumar on more than one occasion since those initial discussions.
Unfortunately, the committed handover dates for the documentation has been missed on more than 2
occasions.

These delays have a direct cost relationship to HPFS by way of depreciation of the assets sitting idle in
India, which have now surpassed one (1) year in age.

We urgently seek your assurances that Inspira remains committed to providing this documentation and also
a final and definitive deadline of when you can make them available.

Regards
Bevan Goodwin
APJ Enterprise Products Manager / Sales
Technology Value Solutions, part of HP Financial Services
PH  +61 3 88334166;  Cell  +61 (0) 412 814 008

-----Original Message-----
From: Goodwin, Bevan [mailto:bevan.goodwin@hp.com]
Sent: 29 June 2011 06:12
To: Sanjaykumar Dhoot
Cc: Bartley, Kevan; Silvestri, James; West, Ross; 'Manoj Kanodia'
Subject: RE: Original importation documentation for CWG TCS equipment returning from lease.

Hi Sanjaykumar, can you please provide us with an update on your progress with extracting and providing
copies of the original importation documentation ?

Confidential                                                                        DEF000001

3

**SOF ¶¶ 42-43**

# Origination of the Equipment (emails between HPFS India and Inspira, 2011)

Message

| From: | Goodwin, Bevan [/O=COMPAQ/OU=AP2/CN=RECIPIENTS/CN=GOODWINB] |
| Sent: | 4/13/2011 11:17:43 AM |
| To: | 'Sanjaykumar Dhoot' [sanjaykumar.dhoot@inspira.co.in] |
| CC: | Bartley, Kevan [kevan.bartley@hpe.com]; Harris, Tom [tom.harris@hpe.com]; O'Grady, Jim [jim.ogrady@hpe.com]; Silvestri, James [james.silvestri@hpe.com] |
| Subject: | RE: Original importation documentation for CWG TCS equipment returning from lease. |
| Attachments: | Tata Consultancy 2751012690_schedule 1_OUT.XLS |

Hello again Sanjaykumar.

This is just a diary follow-up to check on progress of us obtaining copies of the relevant IMPORT documentation related to the Comm Games/TCS H3C Network equipment.

As discussed, in order to export the items from India, we will need copies of the relevant importation documents that you indicated you have.

These would include, but not be limited to, copies of Proforma Invoices supplied with the goods at time of importation, copies of any India Office of Revenue showing what taxes and duties/fess where paid at the time of importation, list of equipment showing serial numbers/model numbers/etc..

Regards

Bevan Goodwin

AP3 Enterprise ...

Technology Value ...

PH +61 3 83334166; Cell +61 (0) 412 814 008

Place your Trade-in & Buyback requests here – www.hp.com/apac/buyback

Place your Recycle requests here – www.hp.com/apac/recycle

From: Goodwin, Bevan
Sent: Friday, 25 March 2011 1:38 PM
To: 'Sanjaykumar Dhoot'
Cc: Bartley, Kevan; Harris, Tom
Subject: Original importation documentation for CWG TCS equipment returning from lease.

Hello Sanjay and thank you for your kind assistance with this end-of-lease project.

Attached is a list of the network assets that where acquired for TCS/CWG on lease contract – 2751012690IN0SVA61A1

These assets appear to have been returned to the lease return processing centre in India and we are now ready to start the Remarketing phase.

4

**SOF ¶¶ 42-43**

# Origination of the Equipment (Defendants' counsel's statements, 2019)

as the produced emails that you reference in the July 12 letter indicate, Defendants requested importation documents from Inspira multiple times in 2011, and Inspira was not responsive to those requests. We also reiterated that because the documents you seek are likely in Inspira's

have knowledge or documents not in Defendants' possession. Furthermore, our understanding is that TT Global did not perform any authentication testing on the equipment.

2(ii): Plaintiffs requested "importation documents," including a "bill of entry" referenced in documents previously produced by Defendants. As those emails reflect, Defendants sent several requests to Inspira for these document in 2011. Defendants have inquired further internally and there is no evidence to suggest that Inspira ever sent these documents to Defendants, despite their requests. Accordingly, we believe that they are not within Defendants' possession, custody or control.

5

**SOF ¶ 43**

Case 1:16-cv-10386-LTS   Document 331-11   Filed 04/16/20   Page 2 of 8



Inspira was instructed to invoice HPFS India for the equipment, HPFS India purchased the equipment and simultaneously leased it to Tata Consultancy. HPFS India did not play any role in selecting the equipment and did not inspect the equipment prior to or during the lease. This is the customary

was seized. After the equipment had been seized, H3C inspected the equipment and advised the police that it believed that the equipment was counterfeit based on the logos found on the equipment.

HPFS India immediately commenced investigating the matter. H3C inspected the seized equipment on behalf of HPFS India and also obtained lists of the seized equipment from the [insert name of relevant China police entity]. HPFS India compared this data against its data for the Sold Equipment. Based on the available evidence HPFS India believes that the counterfeit H3C equipment seized in China is the same equipment sold by HPFS to ICT (through Shinto).

HPFS India has also viewed photos of the Sold Equipment taken prior to its import into China. These photos were obtained from ICT's USA office and from the company HPFS India engages in India to process and refurbish returned lease equipment. Based on these photos it appears that the logos currently affixed to the Sold Equipment were present on the Sold Equipment at the time of the sale from HPFS India to ICT. Copies of the relevant photos obtained are attached as Annex D.

assume that it was buying genuine equipment. Based on the available evidence it would appear that, the relevant counterfeiting activities occurred at some point in time prior to the return of the Sold Equipment to HPFS India upon the expiration of the Leases. HP is

DRAFT FOR DISCUSSION PURPOSES ONLY

6

**SOF ¶ 57**



It is reported that ICT arranged for the Sold Equipment to be imported into China; certain employees of ICT have been incarcerated by Public Security Bureau in China due to allegedly selling counterfeit H3C products. Furthermore, the relevant equipment was seized. After the equipment had been seized, H3C inspected this equipment and, based on the logos found on the equipment, believed that this equipment was counterfeit products.

2013 年

敬：北京市海淀区公安部门

关于 HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED（简称 "HPFS INDIA"）

HPFS India immediately started the investigation of this matter. H3C inspected the seized equipment on behalf of HPFS India and also obtained a partial list of the seized equipment from the Beijing City Haidian District Public Security Bureau. HPFS India compared this data against its

HPFS India 背景信息

HPFS India 和杭州华三通信技术有限公司（简称 "H3C China"）均为 Hewlett-Packard Company 直接收间接控股的全资子公司。

photos, the logos attached to the Sold Equipment were similar to the logos attached to the part of the seized equipment. Copies of the relevant photos are attached as Annex D.

HPFS India 与 ICT 之间的交易

Based on the current evidence and HPFS India further investigation, part of the Sold Equipment supplied by Inspira did not come from HP Company. In order to clarify, HPFS India hopes to

Tata Consultancy 基于商务上的考虑，决定通过 HPFS India，以 租赁的方式获得这些设备。因此，根据合同安排，HPFS India，作为出租人，直接向 Inspira 购买该设备，Inspira 并向 HPFS India 开具设备发票。同时，HPFS India 将设备租赁给 Tata Consultancy 使用。根据所有 IT 租赁行业的惯例，租赁公司在交易过程中仅扮演 "被动财源" 的角色，承租人实际负责订购、检查、安装设备等工作及事宜。HPFS India 在此次交易中没有参与任何设备挑选工作、在租赁之前成和货过程中也没有检查设备。

HPFS India 和 Tata Consultancy 共计达成 4 笔租赁交易（简称 "租约"），如下所示:



7

SOF ¶ 56

# H3C Verification Report (2013)

对"北京程于团伙售假案件"查扣光模块鉴定材料

H3C  Transceivers seized from the "Sales of Counterfeit Products by Chengyu Gang in Beijing Case"
异. were compared in terms of product packaging and product appearance with authentic H3C products. It
has been found out that the vast majority of the seized transceivers are different from our genuine ones.
The identification results conclude trademark infringement with details as follow:

1、H3C 产品外包装情况:

电流  Basically, all of the more than 700 seized transceivers have one or multiple of the above
袋名 abnormalities (inconsistency with the original products). Due to limited identification time, the
accurate statistics of the above various abnormalities are not summarized. However, this does not
affect the overall identification conclusion of the seized products, that is, the above labels (including
anti-counterfeit labels) are abnormal, which is sufficient enough to determine that at least most of
these seized transceivers are counterfeit H3C products.

the seized products was conducted. Judging from the physical characteristics of a large number of
tested items, one can conclude that the batch of seized product has different external appearances

with various counterfeiting tracks. It is pointless to test the electrical performance of these obvious
counterfeits; hence these were not conduced on the seized products.

**SOF ¶¶ 51-52**

# H3C Security Bulletin 2013

**H3C**  文档名称                     文档密级

## H3C 品牌主机、硬盘和光模块防伪公告 V1.1

To protect the interests of consumers, maintaining market order and prevent counterfeit products disrupt the normal market competition mechanism, Hangzhou H3C Technologies Co., Ltd. (H3C) announced that the use of security labels on H3C brand host, hard drives and optical module products (2010 5 Since switching from the old anti-counterfeit labels for the new month on the 10th security label).

The equipment upgrade security labels and technology, will make it easier for consumers to identify the authenticity of the H3C products, to better protect the legitimate rights and interests of consumers against infringement.

Old and the new security labels security labels contrast as follows:

图案

14124003

本文主要介绍 H3C 品

1、主机、硬盘验证

1.1、主机、硬盘所
体如下图:



右边

注：老版防伪标签

**2 , the Optical module authentication Methods:**

2.1, the new anti-counterfeit labels optical modules used, from a different perspective, you can see the different points, specifically the following figure:





1.2、主机、硬盘所使用的新版防伪标签和老版防伪标签，均含有明码和暗码（涂层覆盖），可以到下述链接输入 H3C 序列号(条码)、防伪明码、防伪暗码进行防伪验证：

条码防伪查询：http://channel.h3c.com/channel/system/SearchTrueCode.jsp

具体查询方式，请参见该页面的辅助说明。

2013-09-09          H3C 机密，未经许可不得扩散          第1页，共4页

9

**SOF ¶ 100**

# H3C Security Bulletin 2019



Statement on Anti-counterfeiting for H3C Hosts, and
Optical Modules V1.1

**EXHIBIT**

## I. Range of Application for Anti-Counterfeit Labels:

For your legal benefits and to prevent counterfeit H3C products from disturbing the market order, New H3C Technology Co., Ltd. ("H putting anti-counterfeit labels on the body of partial H3C products from May 10, 2010:

**1. Anti-counterfeit label-A** shall be put on the body of H3C hosts (for Chinese version and Chinese-Foreign version only, other thai version and VIP version).

**2. Anti-counterfeit label-B** shall be put on the body of H3C optical modules (for Chinese version and Chinese-Foreign version only Foreign version and VIP version).



## 2. Anti-counterfeit label-B:

2.1 Anti-counterfeit label-A bears a holographic H3C logo at its center, in which the number of reflection points varies from angle to a shown in the figure below:

| Viewed from the right | Viewed from the left | Viewed from above | Viewed from |
| 5 reflection points | 5 reflection points | 4 reflection points | 4 reflection |

10

**SOF ¶ 100**

# Defendant HPE's Validation guide (2020)



## Visual Inspection - Label Hologram

To help prevent Security Labels from being counterfeited, HPE uses a two-factor authentication system. The Security ID can be validated at the top of this web page, and the hologram can be validated with the guidelines here.

Additional hologram images and details can be found on these pages regarding Security Labels found on Genuine HPE drives (http://h20564.www2.hpe.com/hpsc/doc/public/display?docId=emr_na-c00832103&sp4ts.oid=4304942) and memory (http://h20565.www2.hpe.com/hpsc/doc/public/display?sp4ts.oid=33729&docId=emr_na-c00691020).



11

**SOF ¶ 99**



**Hewlett Packard**
Enterprise



(Revision) Verification of Authentic HPE Universal Hard Drives (SAS, SATA, FATA, SCSI, iSCSI, Fibre Channel), and Solid State Drives (SSDs)

DESCRIPTION

| Document Version | Release Date | Details |
|---|---|---|
| 7 | 05/09/2019 | Updated with the latest security labels. |
| 6 | 11/22/2016 | Updated with the latest security labels. |

HPE also includes a serial number on each Option Kit package that is linked to the number printed on the label. Beware that it is a common practice for counterfeiters to "reuse" serial numbers listed on the packaging (and often on the invoice) and the number printed on the product label in an effort to convince a customer that the product is authentic. The serial number is not intended to be used for product validation.

The latest HPE security label, which began in April 2019, has the following security features:

Security strip has florescent holograms for authentication:

To verify that HPE drives are authentic, use the information provided in the Details section below.

Note: Information on verification of older labeling and packaging of Compaq Parallel SCSI hard drives is available in the following document (c00833220):

(Revision) Verification of Authentic Compaq Universal SCSI Hard Drives
http://h20565.www2.hpe.com/hpsc/doc/public/display?calledBy=Search_Result&docId=emr_na-c00833220&docLocale=en_US

DETAILS

Verification of Authentic HPE Universal Hard Drives

**SOF ¶ 98**

# Mr. Raina's Expert Report

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALEXANDER STYLLER, INTEGRATED
COMMUNICATIONS & TECHNOLOGIES,
INC., JADE CHENG, JASON YUYI, CATHY
YU, CAROLINE MARAFAO CHENG,
PUSHUN CHENG, CHANGZHEN NI,
JUNFANG YU, MEIXIANG CHENG,
FANGSHOU YU, and CHANGHUA NI,

Civil Action No. 1:16-CV-10386 (LTS)

Plaintiffs,

vs.

HEWLETT-PACKARD FINANCIAL

REBUTTAL EXPERT REPORT OF
SHELLEY RAINA REGARDING
THE AUTHENTICITY OF THE
SEIZED EQUIPMENT

67.   *Importantly*, the mere fact that every one of the 647 transceivers contains a unique serial number is itself evidence that they are all authentic.  As I explained above, counterfeiters typically copy-and-paste serial numbers across large batches of their counterfeit transceivers.   The

Respectfully submitted this 5 th day of January, 2020:

Raina

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

13

**SOF ¶ 84**

# Mr. Raina's Testimony

Case 1:18-cv-10385-LTS   Document 331-1   Filed 04/16/20   Page 2 of 111

**Q.** In general, do you agree that a fake logo is an indicator of counterfeiting?

**A.** No.

**Q.** Right. So just the fact that the transceiver carries a counterfeit logo would not lead you to a conclusion that the transceiver is counterfeit?

**A.** That is correct.

14

**SOF ¶ 83**

# Mr. Raina's Testimony

Case 1:14-cv-10386-LTS   Document 331-1   Filed 04/16/20   Page 2 of 111

Q.    Yeah.   So in your analysis, the results put in
      the appendix, you're saying that the
      transceiver itself is authentic, but you
      express no opinion whether the logo attached
      to that transceiver is authentic or
      counterfeit?

A.    I did not analyze the labels.

So this goes back to the point I was
making earlier.  Labels can be counterfeited.
That has no bearing on whether the product
that the label is applied on is counterfeit or
genuine.  That is why, in my experience, and

15

**SOF ¶ 83**

# Dr. Fang's Expert Report

 MITMECHE  Massachusetts Institute of Technology
Department of Mechanical Engineering

Nicholas X. Fang
*Professor*

77 Massachusetts Avenue, Building 3-449
Cambridge, Massachusetts 02139-4307
617.253.2247 (office)
nicfang@mit.edu

### Expert Report of Nicholas Xuanlai Fang, Ph.D.

Da...

Styller, et al. v. Hew...

Ta...

| | |
|---|---|
| I | Qualifications |
| II | Assignment |
| III | Documents and Materials |
| IV | Summary of Opinion |
| V | Testing Methodology |
| VI | Facts and Data Considere... |
| VII | Summary of Findings |
| VIII | Conclusion |

It is my opinion that the majority of the hologram labels inspected (343 of 394, or 87.1%) show indicators of counterfeiting described in the H3C security bulletin and the verification report.

I declare under penalty of perjury that the foregoing is true and correct, and if called as a witness I would testify competently thereto.

Dated: December 16, 2019
Boston, Massachusetts

Signed: _____
Nicholas Xuanlai Fang

16

**SOF ¶ 101**

Ching and David from legal have been working with the brand protection team and whilst there hasn't been a concrete determination as to the authenticity of the assets, the advice that we are getting is that the origination of the equipment is questionable, and as such, we should not allow TT-G to re-sell what they purchased from us. As a result, TT-G will be out of pocket and it is fair to say would be looking to us to make them whole. Nothing has been committed to TT-G, hence wanting to get your acknowledgement that this is the correct course of action before instructing TT-G to destroy the equipment.

Please acknowledge that you agree that we should work with TT-G to ensure they are not financially impacted by this.

Kevan

This would obviously would be a Ross call due to financial impact. My gut says we should fully refund due to questionable nature of product.

Note sure is with have any recourse to pursue upstream

Regards,
Jim

**SOF ¶¶ 61-62**

# Trademark counterfeiting law in China

Case 1:16-cv-10386-LTS   Document 331-13   Filed 04/16/20   Page 2 of 3

**Written Opinion Recommending Prosecution**

Made by PSB

To: Haidian Procuratorate ( or Pe

Criminal Suspects:

Yuyt,  Gender:Male,  Date
Shandong  Province,Educationa
Residence on ID Card: No. 689
ID Card No. 37068211986102
by the police because of sellin
was arrested after Haidian Proc

Yu    Xiaomeng,    G
1th,1990,Nationality:Han,Birthpla
College education, Registered
Haiyang City, Shangdong Provin
criminal detention on Dec. 10th
counterfeited registered tradem
approval on Jan. 15th,2013.

Cheng    Yongguo,   Ge
Nationality:Han Birthplace:
Degree:
Shenzh
criminal
counter
approva

Abo
Dec.9th
were  d
detentio

We
sold tra
Room 4

In summary,three suspects' behavior has violated the provision of Article 214 of the PRC Criminal Law and are suspected of selling goods bearing counterfeited registered trademark. According to the provision of Article 160 of PRC Criminal Procedural Law, we transfer the case to you for examination and prosecution.

PSB of Beijing's Haidian (sealed )

March 14th, 2013

中文版

The following translation was retrieved from the Fujian Provincial People's Government Web site on January 15, 2013. The Chinese text was retrieved on December 13, 2016, from the website of the Gaoxin District Branch of the Baoding Municipal Public Security Bureau in Hebei Province.

* * *

### Criminal Law of the People's Republic of China

(Adopted at the Second Session of the Fifth National People's Congress on July 1, 1979, Revised at the Fifth

Amend
Decem
Amend
on Aug
Amend
on Dec
Amend
on Dec
Amend
on Feb
Amend
on June 29, 2006

Amendment VII, adopted at the 7th Meeting of the Standing Committee of the Eleventh National People's Congress on February 28, 2009

Amendment VIII, adopted at the 19th Meeting of the Standing Committee of the Eleventh National People's Congress on February 25, 2011.

*Article 214*

Whoever knowingly sells commodities bearing counterfeit registered trademarks shall, if the amount of sales is relatively large, be sentenced to fixed-term imprisonment of not more than three years or criminal detention and shall also, or shall only, be fined; if the amount of sales is huge, he shall be sentenced to fixed-term imprisonment of not less than three years but not more than seven years and shall also be fined.

18

SOF ¶ 55

# Trademark counterfeiting law in the U.S.

§ 2320

TITLE 18—CRIMES AND CRIMINAL PROCEDURE

Page 526

"When a person is convicted of a violation of subsection (a), the court in its judgment of conviction shall, in addition to any penalty provided, order the forfeiture and destruction or other disposition of all unauthorized copies of motion pictures or other audiovisual works protected under title 17, or parts thereof, and any audiovisual recording devices or other equipment used in connection with the offense."

## § 2320. Trafficking in counterfeit goods or services

(a) OFFENSES.—Whoever intentionally—

(1) traffics in goods or ingly uses a counterfeit m tion with such goods or s

(2) traffics in labels, pa pers, badges, emblems, boxes, containers, cans, c mentation, or packaging ture, knowing that a c been applied thereto, the to cause confusion, to cau ceive, or

(3) traffics in goods or s such good or service is a good or service the use, m of which is likely to cau jury or death, the disclo formation, impairment o or other significant harm ation, a member of the national security,

or attempts or conspires to graphs (1) through (3) shall vided in subsection (b).

(b) PENALTIES.—

(1) IN GENERAL.—Whoe fense under subsection (a)

(A) if an individual, more than $2,000,000 or than 10 years, or both, than an individual, shall be fined not more than $5,000,000; and

(B) for a second or subsequent offense under subsection (a), if an individual, shall be fined not more than $5,000,000 or be imprisoned not more than 20 years, or both, and if other than an individual, shall be fined not more than $15,000,000.

(2) SERIOUS BODILY INJURY OR DEATH.—

(A) SERIOUS BODILY INJURY.—Whoever knowingly or recklessly causes or attempts to cause serious bodily injury from conduct in violation of subsection (a), if an individual, shall be fined not more than $5,000,000 or imprisoned for not more than 20 years, or both, and if other than an individual, shall be fined not more than $15,000,000.

(B) DEATH.—Whoever knowingly or recklessly causes or attempts to cause death from conduct in violation of subsection (a), if an individual, shall be fined not more than $5,000,000 or imprisoned for any term of years or for life, or both, and if other than an individual, shall be fined not more than $15,000,000.

(3) COUNTERFEIT MILITARY GOODS OR SERVICES.—Whoever commits an offense under subsection (a) involving a counterfeit military good or service—

(A) if an individual, shall be fined not more than $5,000,000, imprisoned not more than 20 years, or both, and if other than an individual, be fined not more than $15,000,000; and

(B) for a second or subsequent offense, if an individual, shall be fined not more than $15,000,000, imprisoned not more than 30 years, or both, and if other than an individual, shall be fined not more than $30,000,000.

## § 2320. Trafficking in counterfeit goods or services

### (a) OFFENSES.—Whoever intentionally—

(1) traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services,

such goods or services, and

(C) the legal representatives of such producers, sellers, and holders.

(f) DEFINITIONS.—For the purposes of this section—

(1) the term "counterfeit mark" means—

(A) a spurious mark—

(i) that is used in connection with trafficking in any goods, services, labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature;

(ii) that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered;

(iii) that is applied to or used in connection with the goods or services for which the mark is registered with the United States Patent and Trademark Office, or is applied to or consists of a label, patch, sticker, wrapper, badge, emblem, medallion, charm, box, container, can, case, hangtag, documentation, or packaging of any type or nature that is designed, marketed, or otherwise intended to be used on or in connection with the goods or services

19



Case 1:16-cv-10386-LTS   Document 101-3   Filed 08/04/17   Page 1 of 14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALEXANDER STYLLER, INTEGRATED
COMMUNICATIONS & TECHNOLOGIES,
INC., JADE CHENG, JASON YUYI, CATHY YU,
CAROLINE MARAFAO CHENG, PUSHUN
CHENG,CHANGZHEN NI, JUNFANG YU,
MEIXIANG CHENG, FANGSHOU YU,and
CHANGHUA NI,

                                    Plaintiffs,

                    v.

HEWLETT-PACKARD FINANCIAL
SERVICES COMPANY, HEWLETT-PACKARD
FINANCIAL SERVICES (INDIA) PRIVATE
LIMITED, HP INC.,HEWLETT PACKARD
ENTERPRISE COMPANY, and DAVID GILL,

                                    Defendants.

**AFFIDAVIT OF VIV**

I, Vivek N Mapara, Age: 33 Years, Occup

(Gujarat), India, doherehy solemnly affirm and de

**INTRODUCTION & (**

(1)   I am a Practicing Advocate based i

in the "State Roll" maintained by the Bar Council

of the Advocates Act, 1961.

(2)   I am enrolled as an Advocate on 9t

isG/1844/2006.

(3)   As per the provision made in Secti

authorized to practice Law in all the Courts, inclu

Tribunals, Judicial & Quasi – Judicial Authorities

(4)   My Education Qualifications are B

of Law (L.LB).

[16] 104. Penalty for selling goods or providing services to which false trade mark or false trade description is applied. –

Any person who sells, lets for hire or exposes for sale, or hires or has in his possession for sale, goods or things, or provides or hires services, to which any false trade mark or false trade description is applied or which, being required under section 139 to have applied to them an indication of the country or place in which they were made or produced or the name and address of the manufacturer, or person for whom the goods are manufactured or services provided, as the case may be, are without the indications so required, shall, unless he proves, -

(a)    That, having taken all reasonable precautions against committing an offence against this section, he had at the time of commission of the alleged offence no reason to suspect the genuineness of the trade mark or trade description or that any offence had been committed in respect of the goods or services; or

(b)    That, on demand by or on behalf of the prosecutor, he gave all the information in his power with respect to the person from whom he obtained such goods or things or services; or

(c)    That otherwise he had acted innocently,

Be punishable with imprisonment for a term which shall not be less than six months but which may extend to three years and with fine which shall not be less than fifty thousand rupees but which may extend to two lakh rupees:



# Photos of transceivers sold to ICT and shipped to China









21





# Photos of transceivers in the PSB custody (from the H3C Verification Report)

1. A large number of the seized items are different in external appearance from our authentic transceivers





Image (5) The seized items are different in external appearance from the authentic ones (common counterfeits before 2008)

However, the labels of the seized items are in inconsistent locations and placements that vary from one another. See the images for details:



Image (6) Unorderly placing of labels on the seized products

# Photos of transceivers inspected by Mr. Raina



Fig. 10



Fig. 14



Fig. 13a



Fig. 13b

# Photos of transceivers inspected by Dr. Fang








# Photos of transceivers sold to TT Global and shipped to Dubai









Case 1:11-cv-91017-WGY   Document 1-2   Filed 02/22/21   Page 28 of 37









# Photos of the Equipment upon arrival in Hong Kong, February 2012









# Photos of Equipment upon arrival in Hong Kong, February 2012



# Photos of the Commonwealth Games equipment left in India, October 2012








# Photos of the Commonwealth Games equipment left in India, October 2012





# IN CONCLUSION

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - -

INTEGRATED COM
TECHNOLOGIES,

　　　Plaint

v.

HEWLETT-PACKAR
COMPANY, et al

　　　Defend

- - - - - - -

they're going to have to explain why -- how they square what

happened -- what conclusions were reached then -- first, what

conclusions they had -- their expert has now, whether it

isn't just conclusions of a paid, hired gun for sure.

BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

STATUS CONFERENCE

Friday, January 11, 2019
2:34 p.m.

John J. Moakley United States Courthouse
Courtroom No. 13
One Courthouse Way
Boston, Massachusetts

Rachel M. Lopez, CRR
Official Court Reporter
One Courthouse Way, Suite 5209
Boston, Massachusetts 02210
raeufp@gmail.com

31

# CONCLUSION

**Defendants cannot square the trademark holder H3C's and their own statements made since 2013 that the transceivers are counterfeit, with their expert's current opinion that they are authentic.**

# CONCLUSION

**Defendants had sold transceivers of unknown nature and origination to ICT (and to TT Global); made statements that the transceivers carried counterfeit H3C trademark logos (in the PSB letter and in the H3C Verification Report), and took actions consistent with transceivers' being counterfeit (instructing TT Global to destoy its transceivers).**

# CONCLUSION

The record shows that the transceivers sold by Defendants to ICT carry counterfeit H3C trademark logos (and Mr. Raina has nothing to say about this).

Transceivers carrying counterfeit trademark logos are considered counterfeit in China, India and the U.S.

Accordingly, there is no genuine factual dispute left for the jury, and Plaintiffs are entitled to summary judgment on the issue of counterfeiting as a matter of law.

34

## THANK YOU

